**CASE NO:   22-16881**

---

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

---

**DANIEL MARTIN**,

*Plaintiff-Appellant*,

v.

**CLARK COUNTY; JOHN MARTIN AND MARCUS MCANALLY,**

*Defendants-Appellees*.

---

On Appeal from the United States District Court
for the District of Nevada
Case No. 2:19-cv-01623-APG-DJA
The Honorable Andrew P. Gordon

---

**APPELLEES' ANSWERING BRIEF**

---

STEVEN B. WOLFSON, ESQ.
Nevada Bar No. 1565
District Attorney
Civil Division
SCOTT DAVIS
Deputy District Attorney
State Bar No. 10019
JEFFREY ROGAN
Deputy District Attorney
State Bar No. 10734
500 South Grand Central Parkway
Las Vegas, NV  89115
Telephone: 702.455.4164
Attorneys for Defendants-Appellees

# TABLE OF CONTENTS

TABLE OF CONTENTS............................................................... i

TABLE OF AUTHORITIES ...................................................... iii

I.    INTRODUCTION.................................................................1

II.   STATEMENT OF ISSUES PRESENTED ...................................1

III.  STATEMENT OF FACTS......................................................2

  A.   The Diabetic Tray Incident .............................................2

  B.   The Department of Juvenile Justice Services Conducts an Internal
Investigation.......................................................................5

  C.   Daniel's Attendance Issues ...............................................8
    1.  Daniel's Prior Discipline for Attendance Issues ...........................8
    2.  Daniel's Absence From Duty ..............................................8
    3.  Daniel's Prior Lawsuit....................................................9

IV.  STATEMENT OF THE STANDARD OF REVIEW...................11

V.   SUMMARY OF ARGUMENTS ...........................................11

VI.  ARGUMENTS ...............................................................12

  A.   The Summary Judgment Standard ...........................................12

  B.   The District Court Properly Granted Summary Judgment On Daniel's
Claim of Race Discrimination When Daniel Failed to Show a Prima Facie Case
of Discrimination .................................................................13
    1.  Daniel Does Not Dispute the District Court's Decision to Exclude Joseph
Whitaker as a Comparator................................................14
    2.  Daniel is Not Similarly Situated to Marcus McAnally...........................15
      a.  Daniel's Comparison to McAnally Relies Upon Improper Evidence...16
      b.  Daniel Does Not Challenge the District Court's Finding that the
Supervisory Distinction Precludes a Similarly Situated Finding ..............17
      c.  The Time Gap Precludes a Similarly Situated Finding ........................18
      d.  Daniel Presented No Evidence Showing Similar Misconduct to
McAnally.......................................................................20

  C.   Daniel Did Not Present Evidence to Support A Prima Facie Claim for
Retaliation .......................................................................22

D.     The District Court Did Not Err in Finding that Daniel Failed to Present Evidence of Pretext For Both Discrimination and Retaliation Claims ................30

E.     The District Court Properly Granted Summary Judgment on Clark County's Counterclaim ............................................................................33

VII.      CONCLUSION ......................................................................36

VIII.     STATEMENT OF RELATED CASES: ....................................38

*Attorney for Defendants-Appellees Clark County, Marcus McAnally and John Martin* ................................................................................38

IX.     CERTIFICATE OF COMPLIANCE ..........................................39

*Attorney for Defendants-Appellees Clark County, Marcus McAnally and John Martin* ................................................................................39

X.     CERTIFICATE OF SERVICE....................................................40

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Fresno County*, 342 F. App'x 255 (9th Cir. 2009)..............................22

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986)............................................13

*Awolesi v. Shinseki*, No. 10-CV-6125, 2012 WL 527631 (W.D.N.Y. Feb. 16, 2012) .................................................................................................................................35

*Bastidas v. Good Samaritan Hosp. LP*, 774 F. App'x 361 (9th Cir. 2019) .............20

*Bergene v. Salt River Project Agric. Improvement and Power Dist.*, 272 F.3d 1136 (9th Cir. 2001)...................................................................................................23

*Bishop v. Garland*, No. 22-35139, 2023 WL 3719747 (9th Cir. May 30, 2023)....35

*Block v. City of Los Angeles*, 253 F.3d 410 (9th Cir. 2001) ...................................17

*Brooks v. City of San Mateo*, 229 F.3d 917 (9th Cir. 2000) ...................................25

*Brown v. Dep't of Public Safety*, 446 Fed.Appx. 70 (9th Cir. 2011) ......................28

*Bullen v. Sessions*, 716 F. App'x 582 (9th Cir. 2017)..............................................29

*Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)...........................25

*Carboun v. City of Chandler*, 253 F. App'x 656 (9th Cir. 2007)............................26

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).......................................................13

*Chuang v. Univ. of Cal. Davis, Bd. of Trustees*, 225 F.3d 1115 (9th Cir. 2000) ....26

*Clark County Sch. Dist. v. Breeden*, 532 U.S. 268 (2001) .....................................24

*Cohen v. Fred Meyer, Inc.*, 686 F.2d 793 (9th Cir. 1982).......................................23

*Coszalter v. City of Salem*, 320 F.3d 968 (9th Cir. 2003)........................................29

*Devereaux v. Abbey*, 263 F.3d 1070 (9th Cir. 2001) ...............................................11

*Fazeli v. Bank of Am., NA*, 525 F. App'x 570 (9th Cir. 2013) ................................28

*Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151 (9th Cir. 2010) ........................ 19, 30

*Hellman v. Weisberg*, 360 F. App'x 776 (9th Cir. 2009) .........................................26

*Hook v. Regents of Univ. of California*, No. CV 05-356 JH/WPL, 2007 WL 9706061, (D.N.M. Mar. 6, 2007)..........................................................................35

*Hopkins v. Bd. of Educ. of City of Chicago*, 73 F. Supp. 3d 974 (N.D. Ill. 2014) ..35

*Huskey v. City of San Jose*, 204 F.3d 893 (9th Cir. 2000).......................................24

*Kirby v. Dole*, 736 F.2d 661 (11th Cir. 1984).........................................................34

*Mahoe v. Operating Engineers Loc. Union No. 3*, No. CIV. 13-00186 HG-BMK, 2014 WL 6685812 (D. Haw. Nov. 25, 2014).....................................................28

*Martinez–Serrano v. INS,* 94 F.3d 1256 (9th Cir.1996) .................................... 15, 18

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ..............13

*McDonnell Douglas v. Green,* 411 U.S. 792 (1973) ........................... 14, 22, 30, 32

*Merrick v. Hilton Worldwide, Inc.*,867 F.3d 1139 (9th Cir. 2017).........................31

*Moore v. United States Dep't of State*, 351 F. Supp. 3d 76 (D.D.C. 2019)............35
*Moran v. Selig*, 447 F.3d 748 (9th Cir. 2006)............................................14
*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) .................................33
*Ozburn-Hessey Logistics, LLC v. NLRB*, 803 F. App'x 876 (6th Cir. 2020)...........21
*Pickens v. Astrue*, 252 F. App'x 795 (9th Cir. 2007)................................................24
*Ray v. Henderson,* 217 F.3d 1234 (9th Cir. 2000)....................................................27
*Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133 (2000)...........................13
*Rivera v. City & County of Denver*, 365 F.3d 912 (10th Cir. 2004) .......................19
*Smith v. Mack Trucks, Inc.*, 505 F.2d 1248 (9th Cir. 1974) ...................................21
*Steckl v. Motorola, Inc.,* 703 F.2d 392 (9th Cir. 1983)............................................31
*Strother v. Southern Cal. Permanente Med. Group*, 79 F.3d 859 (9th Cir.1996)...25
*Taylor v. List*, 880 F.2d 1040 (9th Cir. 1989)..........................................................13
*U.S. Postal Serv. Bd. of Governors v. Aikens,* 460 U.S. 711 (1983) ......................20
*Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013) ...............................23
*Vasquez v. County of Los Angeles.*, 349 F.3d 634 (9th Cir. 2003)............. 17, 18, 20
*Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1064 (9th Cir. 2002)...... 23, 31
*Welfare Div. v. Fowler,* 858 P.2d 375 (Nev. 1993) .................................................32
*Woods v. Washington*, 475 F. App'x. 111 (9th Cir. 2012).......................................34

**Statutes**

Nev. Rev. Stat. 608.019 ...........................................................................................32
Title VII, 42 U.S.C. § 1981.......................................................................................13

**Rules**

Fed. R. Civ. Pro. 1....................................................................................................13

## I.    INTRODUCTION

Summary judgment proceedings turn on evidence, not on allegations and not on insults. When considering the issues presented here, the district court properly looked to Daniel Martin ("Daniel") to provide evidence to support his allegations and theories sufficient to show a genuine issue of material fact for trial. Daniel failed to do so across the board. The district court properly granted summary judgment in favor of Clark County on all claims.

## II.    STATEMENT OF ISSUES PRESENTED

1. Did the district court misapply the summary judgment standard by entering summary judgment in favor of Clark County when Daniel failed to present evidence showing a prima facie case of discrimination?

2. Did the district court misapply the summary judgment standard by entering summary judgment in favor of Clark County when Daniel failed to present evidence showing a prima facie case of retaliation?

4. Did the district court misapply the summary judgment standard by ruling in favor of the County when Daniel failed to present evidence showing that the County's stated reasons for terminating Daniel's employment were pretext?

3. Does a second Title VII discrimination lawsuit render a settlement agreement from a prior Title VII lawsuit unenforceable?

1

### III.   STATEMENT OF FACTS

Daniel Martin was employed by Clark County as a Juvenile Probation Officer. He was assigned to the County's juvenile detention center where youth inmates are housed. His duties included looking after the youth who had been committed to the detention center by the juvenile courts. Looking after the youth in the detention center encompassed all parts of Daniel's workday, including mealtimes. (2-ER-255-56); (2-ER-159-60 ¶¶ 1,3).

### A.   The Diabetic Tray Incident

Some of the youth committed to the juvenile detention center have special dietary needs. These needs are centrally-tracked, and lists are distributed as needed throughout the detention center. The cooks in the detention center's kitchen are notified of these special dietary needs and will separately prepare the corresponding special meals. In order to ensure that these specially-prepared meals are properly distributed, the detention center publishes a daily special diet list. A hard copy of that list is printed and placed at the front of the serving line in the detention center's dining hall at each meal. (4-ER-628-629 ¶¶ 5-6). The list is placed there for the officers to consult in order to ensure that the specially-prepared meals are delivered correctly to the youth with the corresponding special need. (4-ER-628-629 ¶ 6). The instruction for officers to verbally read off the list to kitchen

2

staff as the youth proceed through the line is disseminated by verbal instructions from supervisors to the officers. (4-ER-629 ¶ 7); (4-ER-719).

On August 17, 2017 Daniel was working and assigned to a particular unit (E-3) within the detention center. Daniel placed himself at the head of the serving line in the dining hall. (4-ER-728). As his group of youth each came forward one by one to receive their meal trays Daniel did not consult or even pick up the special diet list. (4-ER-588-589).[1] This was observed by one of the supervisors in the facility, one Marcus McAnally. McAnally instructed Daniel that he was to consult the special diet list and to read off the list verbally to the kitchen staff as the youth came forward to verify the youth received their specially-prepared meals. (3-ER-452:1-5); (4-ER-723).

Daniel immediately challenged this instruction from Supervisor McAnally, demanding that McAnally point out to him where that specific direction had been written down in the department's policies. McAnally responded to the effect that Daniel could look it up for himself. Daniel turned his back on McAnally and walked away. (3-ER-452:6-22).

Within minutes of this interaction, Daniel sent an e-mail to the manager of the detention center, Dean Steiner, confirming this interaction and claiming that

---

[1] The exhibits filed in the district court contained video from each event. (4-ER-725).

3

the instruction from McAnally to read off the special diet list was "harassment." (4-ER-723). Daniel thereafter refused to follow the instruction given by Supervisor McAnally.

On August 24, 2017, Daniel again placed himself at the head of the serving line and the youth began moving through to receive their breakfast meal. (4-ER-729 ¶ 7). The standard breakfast menu that day included cereal and a sugary pastry. (3-ER-540). There was a new youth in the facility who had been remanded to the detention center only the day before and placed in unit E-3, the unit in which Daniel worked. The youth was a diabetic and accordingly the kitchen staff had specially prepared a diabetic meal tray for him. (4-ER-730 ¶ 11).

As the youth moved through the line, Daniel failed to consult the special diet list, or to read off of the list to kitchen staff as he had been instructed by Supervisor McAnally. (3-ER-542 ¶ 5). The diabetic youth proceeded through the line, receiving a standard meal. As the last of the youth were coming forward, another supervisor named Jesse Navarro reminded Daniel that when working the front of the line officers are supposed to read off the special diet list to the kitchen staff. After a brief back and forth, Daniel claimed to have a bathroom emergency and left the area. (3-ER-542 ¶¶ 4-7).

After the trays had been distributed, one of the cooks noticed that the diabetic meal tray had not been handed out, and immediately notified detention

center staff, including Supervisor Navarro. Staff were able to then identify the diabetic youth who had received the incorrect meal. The youth had already begun to eat the sugary meal, and medical staff from the detention center's nursing unit were summoned to treat the youth's elevated blood sugar levels. (3-ER-542-543 ¶ 8-10).

In the aftermath of the diabetic tray incident, Daniel met with his direct supervisor on August 29, 2017. His direct supervisor was named Savannah Jaime.[2] During this meeting, Supervisor Jaime gave the following instruction to Daniel: "do not position yourself at the front of the serving line. Allow other staff to complete that duty and conduct sight and sound supervision of youth in other areas of the dining hall." This instruction was in writing, and Daniel acknowledged it by signing the document. (3-ER-545)

After receiving this instruction from Supervisor Jaime, Daniel again placed himself at front the serving line the very next day on August 30, 2017, and did so again on September 4, 5 and 13, 2017. (4-ER-624 #9-12).

### B.   The Department of Juvenile Justice Services Conducts an Internal Investigation

The close-call with the diabetic youth prompted an internal investigation by the department. A central supervisor for the Department of Juvenile Justice

---

[2] Navarro and McAnally were duty supervisors; a roaming supervisor for the entire detention center. Supervisor Jaime was the supervisor over Unit E-3.

5

Services named Richard Nelson was tasked to look into the incident along with another officer named Danillo Chavarria. (4-ER-629 ¶ 8). As part of the investigation Nelson and Chavarria interviewed Daniel. (4-ER-727 ¶ 1; 4-ER-731 ¶¶ 15-17).

Department policies demand that an employee be truthful during an internal investigation and specify that untruthfulness during an investigation is grounds for immediate termination. (3-ER-531-532 ¶ D). It is standard protocol for Nelson to admonish interviewees of their obligation to be truthful and the consequence of termination for being untruthful during an interview, and this same admonishment was given to Daniel, who acknowledged as much in writing. (4-ER-732); (4-ER-553).

During his interview with Nelson and Chavarria, Daniel told the investigators that on the morning of the diabetic tray incident, he had indeed picked up and read off the special diet, and further told the investigators that he had been the one to discover that the youth had not received his specially-prepared diabetic tray. (4-ER-581).

Daniel was interviewed a second time, and during the second interview repeated the same statements – that he had read off the special diet list and that he had been the one to discover the problem with the diabetic youth receiving the standard tray. Daniel also stated during the interview that he had not been given

any direction, written or otherwise, from Supervisor Jaime to not work at the front of the serving line. (4-ER-581-582).[3]

The investigation concluded that Daniel had committed misconduct. Daniel was substantiated on the grounds of insubordination for defying Supervisor McAnally's direction to read off the special diet list, the result of which placed the diabetic youth in jeopardy, and also for defying the direction of Supervisor Jaime to refrain from working the front of the serving line. He was also substantiated on grounds of untruthfulness during an investigation owing to the false and misleading statements he had made about having read off the list on August 24, 2017, discovering the problem with the diabetic tray and for denying that he had been instructed to not work at the front of the serving line. (4-ER-597-598).

As a result of Daniel's misconduct, Daniel was recommended for termination. The decision to terminate Daniel for these instances of misconduct was made by the department's Assistant Director, Michael Whelihan, in consultation with the managers of detention center: Dean Steiner and Carolyn Banks. Marcus McAnally played no role in the decision to terminate Daniel's employment. (4-ER-630 ¶ 17); (3-ER-462:11-15).

---

[3] These interviews were recorded and the audio of each interview was an exhibit before the district court. (4-ER-725).

**C.    Daniel's Attendance Issues**

The issues stemming from Daniel working the front of the serving line were not the only problems affecting Daniel's employment at that time.

1. Daniel's Prior Discipline for Attendance Issues

Daniel had been terminated in 2015 as the culmination of the progressive discipline process due to attendance issues. (4-ER-600-611). Daniel's position is covered by a collective bargaining agreement, which allows for an internal grievance process. (4-ER-642-643). Following the 2015 termination, Daniel used the grievance process to challenge his termination. At the second step of that process, Daniel's discipline was reduced by the County to a suspension and Daniel was reinstated on October 13, 2015. (4-ER-616-617). The same collective bargaining agreement stipulates that a suspension is a permanent mark and sets out a hierarchy of progressive discipline in which the level of discipline following a suspension is termination. (4-ER-638).

Approximately six months after he had been reinstated, Daniel filed a charge with the EEOC and then a lawsuit related to this attendance discipline. These are discussed in subsection 3 below.

2. Daniel's Absence From Duty

On September 21 2017, Daniel worked a double shift. While on duty during his second shift he left his post at the detention center. He did so without clocking

8

out and he did so without seeking permission from a supervisor or even letting anyone else know where he would be or how long he would be absent. Daniel did return after a period of 18 minutes. His stated purpose in leaving was going to get food. (4-ER-670 Deposition p. 89).

These facts were never in dispute as Daniel admitted to leaving his post without permission, without clocking out, and without notifying anyone. This was also misconduct in violation of the department's time and attendance rules. And Daniel had already been through the steps of progressive discipline. Daniel was thus recommended for termination on this basis as well. (2-ER-297-298). Marcus McAnally had no involvement in the attendance discipline.

### 3. Daniel's Prior Lawsuit

Approximately six months after his first termination was reduced to a suspension and after he had been reinstated, Daniel filed a complaint with the EEOC on May 12, 2016, and eventually a lawsuit filed in the federal court for the District of Nevada on August 26, 2016. This prior lawsuit alleged claims of race discrimination in the form of a hostile work environment, citing to specific incidents. (3 ER 302-316; 308-309 ¶ 19).

The District of Nevada has adopted Local Rule 16-6 which creates an Early Neutral Evaluation program in order to try to resolve select cases at an early stage.

Local court rules direct all employment cases to go through this Early Neutral Evaluation process. This included Daniel's prior lawsuit.

An Early Neutral Evaluation was held concerning Daniel's prior lawsuit on February 17, 2017 and resulted in a settlement agreement. (3-ER-318-326). Daniel agreed to dismiss his pending litigation and agreed to release Marcus McAnally, John Martin, Clark County and its employees from liability as to all existing claims "which are or could be the subject of this occurrence" as well as releasing Clark County and its employees from "any liability whatsoever in any way growing out of the incidents and allegations which are the subject of [the prior lawsuit]." (3-ER 319; 323). The operative language from the settlement agreement states:

> In consideration of the payment called for herein
> Plaintiff further covenants and agrees on his own behalf …
> that [he] will not, at any time hereafter, commence,
> maintain or prosecute any action or otherwise, or serve any
> against herein Defendants…for damages, personal injury,
> losses, liens, wrongful death or other damages or losses of
> any kind or amount arising in any manner out of the
> allegations and incidents which are the subject of Case No.
> 2:16-cv-2027-JCM-VCF.

(3-ER-323).

In exchange the County paid Daniel $15,000.00. (3-ER-318); (3-ER-366).

Despite this settlement language, Daniel's complaint in the current case purported to incorporate the entire complaint from the prior lawsuit into the current case. (1-ER-38:1-2). Daniel's complaint also specifically invoked a number of

allegations that were common to the prior litigation and that pre-dated the settlement agreement. (recounted at 1-ER-38, referring to the Second Amended Complaint filed in the current case).

## IV.  STATEMENT OF THE STANDARD OF REVIEW

An order granting summary judgment is subject to a *de novo* standard of review. *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). This entails a review of the evidence to determine whether there is a genuine issue of material fact and whether the district court correctly applied the substantive law. *Id*.

## V.  SUMMARY OF ARGUMENTS

The district court correctly applied the summary judgment standard and entered judgment after Daniel failed to present evidence showing a genuine issue of material fact on the points for which Daniel bore the burden of proof.  This a common failure point for each of Daniel's claims as well as for his response to the County's counterclaim.

Daniel's discrimination and retaliation claims followed a burden-shifting framework and the district court correctly applied the substantive law in using such a framework. Within this framework, Daniel failed to present evidence showing a prima facie case of discrimination because he was unable to point to any similarly situated individual who was treated differently. Daniel failed to present evidence

11

of retaliation because he did not present evidence showing the required causal connection between protected activity and an adverse employment action.

For both the claims of discrimination and retaliation, Daniel failed to present evidence showing that the County's stated reasons were pretext. The district court did not err in following this approach nor by looking to Daniel to step forward and present evidence showing a genuine factual dispute.

The district did not err in granting summary judgment on Clark County's counterclaim. The County established each element of its counterclaim for breach of contract, and Daniel did not dispute the County's case. Instead, Daniel opposed summary judgment relying on an affirmative defense; claiming that his breach of the settlement agreement was excused due to public policy. The district court did not err by recognizing that prior settlement agreements are enforceable, even when those settlement agreements are for Title VII lawsuits.

This court should affirm the entry of summary judgment in favor of the County on all claims.

## VI.    ARGUMENTS

### A.    The Summary Judgment Standard

The summary judgment standard does not invoke any special rules for employment cases. Rather the summary judgment rules are designed to apply to

"every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. Pro. 1).

The Supreme Court has further stated that courts should not "treat discrimination differently from other ultimate questions of fact.'" *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 148 (2000) (internal quotation omitted).

Under this well-established standard, in order to defeat a properly supported motion for summary judgment a non-moving party must come up with evidence to show that a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). A factual dispute is material only if it could affect the outcome of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

This is the standard that applies in this case, and this is the framework that the district court followed. It did not err in doing so.

### B.    The District Court Properly Granted Summary Judgment On Daniel's Claim of Race Discrimination When Daniel Failed to Show a Prima Facie Case of Discrimination

Daniel claims that his termination was an act of race discrimination[4] and

---

[4] As Daniel notes in his opening brief, his claims under Title VII, 42 U.S.C. § 1981 and state law are all subject to the same analysis. (Opening Brief p. 46, Dkt # 11). Accordingly, the County's arguments encompass all these claims.

13

invoked the burden shifting approach from *McDonnell Douglas v. Green,* 411 U.S. 792 (1973). Under this framework, Daniel must be able to present evidence to show a prima facie case, which entails a showing that (1) he belonged to a protected class; (2) he was qualified for his job; (3) he was subject to an adverse employment action; and (4) similarly situated employees not in his protected class received more favorable treatment. *Moran v. Selig*, 447 F.3d 748, 753 (9th Cir. 2006).

In the proceedings below, the district court considered eight proposed comparators and for each noted that they either were not similarly situated to Daniel, or else had not been subjected to different treatment. (1-ER-19:21-21:16). On appeal, Daniel narrows his proposed comparators significantly, such that only one comparator is still at issue – Marcus McAnally. (Opening Brief, p. 47, Dkt #11).

> 1. <u>Daniel Does Not Dispute the District Court's Decision to Exclude Joseph Whitaker as a Comparator</u>

As a preliminary, Daniel's brief does point to two individuals: McAnally and Joseph Whitaker as a proposed comparators. But a comparison to Whitaker is not proper in this appeal because making that comparison simply charges past the district court's evidentiary ruling that excluded the Whitaker comparison.

When conducting its similarly-situated analysis, the district court excluded Whitaker from comparison because during the discovery phase Daniel failed to identify Whitaker as a proposed comparator in response to the County's discovery

requests. (1-ER-21:12-14). Daniel's brief merely reiterates his position that Whitaker was similarly situated, but he does not acknowledge, let alone assign any error to, the district court's exclusion of Whitaker as a comparator in the first place.[5]

As Daniel does not challenge the district court's evidentiary decision to exclude the Whitaker comparison, the Court should not go any further and should not consider Daniel's arguments concerning Whitaker as a comparator. *e.g. Martinez–Serrano v. INS,* 94 F.3d 1256, 1259–60 (9th Cir.1996) (issues not supported by argument in the opening brief are deemed abandoned).

### 2. Daniel is Not Similarly Situated to Marcus McAnally

Daniel's brief points to only one other proposed comparator - Marcus McAnally. The district court held that Daniel had not presented evidence to show that he and McAnally were indeed similarly situated. (1-ER-20-21).

This failure persists on appeal. Daniel's arguments do not point to any evidence in the record that would tend to support a similarly situated finding.

Daniel's assertion that that he was similarly situated to McAnally is based only upon a statement from the same Joseph Whitaker that references two bygone incidents: the first is a rather vague accusation reaching back to 2001 claiming that

---

[5] Had Daniel raised this an issue in this appeal, the decision excluding the Whitaker evidence would invoke an abuse of discretion review rather than a de novo review. *Remington v. Mathson*, 575 F. App'x 808, 809 (9th Cir. 2014).

McAnally had lied about some sort of incident concerning an instruction during a training incident involving OC spray. The second incident is also nebulous on the facts and refers to some apparent confusion that arose in 2010 about the status McAnally's peace officer certification. (2-ER-155-156 ¶ 19-20). This second incident does not point to any identifiable lie stated by McAnally, merely that McAnally had requested for Whitaker to sign a statement that McAnally had completed the department's training academy. The apparent point is to juxtapose Daniel's substantiated finding for dishonesty in an internal investigation against McAnally's supposed dishonesty in these two events. This presents multiple problems when trying to link McAnally and Daniel as similarly situated.

a. *Daniel's Comparison to McAnally Relies Upon Improper Evidence*

From the outset, the Whitaker declaration fails to present admissible evidence, for it is plainly a recounting of decades-old hearsay and department rumors.

The declaration claims only that McAnally lied back in 2001 about the pepper spray incident but does not state any additional information. Critically it does not state whether or not this was in the context of an official internal investigation or whether there had ever been any substantiated findings against McAnally. It also fails to present evidence about whether McAnally was

disciplined for this incident, asserting only that "to my knowledge" McAnally had not been disciplined. (2-ER-155-156 ¶ 19-20).

Given these defects in the Whitaker declaration, it would have been an abuse of discretion if the district court had actually counted the declaration as adequate to show an issue of fact. *Block v. City of Los Angeles*, 253 F.3d 410, 419 (9th Cir. 2001) (holding that district court abused its discretion when it considered an affidavit at summary judgment stage from an individual that was not founded on personal knowledge and relied upon inadmissible hearsay). As such the Whitaker declaration cannot now establish the sort of genuine factual issue that is necessary for overturning the district court's entry of summary judgment.

> b. *Daniel Does Not Challenge the District Court's Finding that the Supervisory Distinction Precludes a Similarly Situated Finding*

As to McAnally, the district court's analysis cited to this Court's decision in *Vasquez v. County of Los Angeles.*, 349 F.3d 634, 641 (9th Cir. 2003) for the general principle that "[e]mployees in supervisory positions are generally not similarly situated to lower-level employees." (1-ER-19:14-15). Despite the district court's express invocation of this principle as a basis for finding McAnally was not a similarly situated comparator, Daniel does not address it all in his opening brief. He simply glosses over the discrepancy between Daniel's and McAnally's different positions to accuse McAnally of lying.

The law recognizes that the supervisor/lower-level employee distinction is a general rule and it may warrant exceptions in some cases. Yet Daniel's brief presents no argument or reason why this particular case ought to dispense with the general rule stated in *Vasquez* or whether any exceptions to the general rule might apply. He has thus abandoned any such argument. *Martinez–Serrano,* 94 F.3d at 1259–60). He has not shown that the district court committed any reversible error by relying upon *Vasquez* to find that Daniel and McAnally are not similarly situated due to the difference in their supervisory status.

c. *The Time Gap Precludes a Similarly Situated Finding*

A second rationale invoked by the district court, that Daniel also ignores on appeal, is the fact that McAnally's actions date back to 2001 (or even in 2010 for the certification issue). Daniel's misconduct occurred in late 2017 and he was not subject to the same leadership that was in place in 2001. Indeed the entire leadership in the department of juvenile justice services had turned over in the 16-year period between McAnally's pepper-spray incident and Daniel's misconduct. (4-ER-630 ¶ 14). This is a significant point when searching for indicia of discrimination as part of a similarly-situated analysis.

The inescapable and clinical logic supporting this point was explained by the Tenth Circuit as follows:

> Comparison of one disciplinary action with another ordinarily
> is relevant only to show the bias of the person who decided

18

upon the disciplinary action. If X fires A, an Hispanic, for particular misconduct, but gives only a warning to B, a non-Hispanic, for identical misconduct, one might infer that something beyond the misconduct (such as a bias by X against Hispanics) motivated the disciplinary action. But if it was Y, not X, who decided not to impose a harsher sanction against B, one cannot infer that X's decision to fire A must have been motivated by something other than A's misconduct. X may simply have a less tolerant view toward misconduct than Y does.

*Rivera v. City & County of Denver*, 365 F.3d 912, 922 (10th Cir. 2004)

This law this circuit is consistent with this sound logic. The district court noted at the outset of its analysis that the presence of the same supervisor is a relevant consideration to a similarly situated analysis. (1-ER-019 at 18:20) (citing to *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1157 (9th Cir. 2010)).

While *Hawn* did not impose an inflexible same-supervisor rule,[6] *Hawn* did note that having the same supervisor is still a relevant factor in a similarly-situated analysis as the district court correctly stated. *Hawn* also reiterated the more foundational point that common sense is what governs any prima facie analysis. *Hawn* at 1159 ("[the prima facie case] is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of

---

[6] In *Hawn* it was still significant that there was an ultimate decision-maker in common for both groups for employees that formed the similarly situated analysis. *Hawn,* 615 F.3d at 1157-58.

discrimination.") (quoting *U.S. Postal Serv. Bd. of Governors v. Aikens,* 460 U.S. 711, 715 (1983)).

Here, the 16-year time gap between the two events and the changeover in department leadership meant that there could be no unity in decision-makers between the 2001 pepper spray incident and Daniel's 2017 dishonesty during an internal investigation incident. And in that case there is simply no plausible inference of racial animus to be made by comparing Daniel and McAnally.

>    d. *Daniel Presented No Evidence Showing Similar Misconduct to McAnally*

As Daniel does not bother arguing either of the foregoing points the Court should affirm on these bases. But even if the Court goes beyond those points, it should still affirm because Daniel was unable to present evidence to show that McAnally committed similar misconduct.

Within a similarly situated analysis, the court looks to whether the two comparators "engage[d] in problematic conduct of comparable seriousness…" *Vasquez*, 340 F.3d at 641; *see also Bastidas v. Good Samaritan Hosp. LP*, 774 F. App'x 361, 364 (9th Cir. 2019) (upholding dismissal of a complaint where there was no showing that comparators had engaged in similar levels of misconduct).

Daniel's substantiated dishonesty occurred while he was being interviewed as part an official department internal investigation. (4-ER-597-598). This is

important. Employers have a recognized and compelling interest in obtaining truthful answers from employees during an internal investigation. *See Ozburn-Hessey Logistics, LLC v. NLRB*, 803 F. App'x 876, 887 (6th Cir. 2020). And as noted above, the formalities and admonishments given during an internal investigation, including the warning that untruthful responses could lead to termination, are to ensure truthful responses from employees.

The department's policy has long identified dishonesty during an internal investigation as a terminable offense. (3-ER-531-532 ¶D). Dishonesty outside of a formal investigation may still be misconduct depending upon circumstances, but it has not been identified as misconduct that warrants termination. (3-ER-531-533).

In his brief to this Court, Daniel asserts that McAnally's supposed lies about the pepper spray incident this took place "in an investigation" (Opening Brief, p. 47, Dkt #11) but this assertion is not supported by the record. The Whitaker declaration, for all of its faults, makes no reference to any actual investigation at all. (2-ER-155 ¶ 19). Thus, Daniel's contention that McAnally lied in an investigation is merely an assertion of counsel, and not actual evidence. *Smith v. Mack Trucks, Inc.*, 505 F.2d 1248, 1249 (9th Cir. 1974) (arguments of counsel "…do not create issues of fact capable of defeating an otherwise valid motion for

21

summary judgment.")[7] Apart from this unsupported assertion, there is no indication that the pepper spray incident in 2001 involved dishonesty during an internal investigation.

Finally, the district court noted that there had never been any sustained allegations against McAnally stemming from the pepper spray incident. (1-ER-21). As there were no findings of any actual dishonesty by McAnally upon which discipline could then be based, this also precludes a finding that Daniel and McAnally were similarly situated.

Daniel's failure is a failure of evidence –he has not presented any evidence to equate himself to McAnally for purposes of a prima facie case of discrimination. In such cases, it is proper for a district court to enter summary judgment against a plaintiff. e.g. *Anderson v. Fresno County*, 342 F. App'x 255, 258 (9th Cir. 2009).

### C.    Daniel Did Not Present Evidence to Support A Prima Facie Claim for Retaliation

Daniel's other claim was for retaliation.[8] Title VII retaliation claims are also considered under a *McDonnell Douglas* burden-shifting framework. In a retaliation

---

[7] Nor is it even a reasonable inference. Whitaker was never a supervisor and thus never in any position to conduct an internal investigation into McAnally. (2-ER-151-1).

[8] As with Daniel's discrimination claims, the law calls for the same analysis to apply to claims under Title VII, 42 U.S.C. § 1981 and Daniel's state claims. (Opening Brief p. 37 Dkt # 11). The County's analysis thus addresses all such claims.

case this calls for first a prima facie showing by a plaintiff, followed by a legitimate reason articulated by a defendant, followed by a showing of pretext by the plaintiff. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1064 (9th Cir. 2002). As with Daniel's discrimination claims, his retaliation claims also failed at the prima facie stage.

A prima facie case of retaliation requires a showing that (1) the plaintiff engaged in a protected activity, (2) suffered an adverse employment action, and (3) a causal connection between the two. *Bergene v. Salt River Project Agric. Improvement and Power Dist.*, 272 F.3d 1136, 1140-41 (9th Cir. 2001). The causal connection under this third prong entails a but-for standard of causation. *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013).

The district court entered summary judgment because Daniel was unable to present evidence to show the required causal connection.

To show the requisite causal link, the plaintiff must present evidence "sufficient to raise the inference that her protected activity was the likely reason for the adverse action." *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982). One possible, but still problematic, way for a plaintiff to raise an inference of causation is by looking to the timing between the protected activity and the

adverse action.[9] While it is true that the law can allow for causation to be inferred based upon nothing more than timing, the Supreme Court, in has admonished that if this to be done then "[t]he temporal proximity must be "very close" *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). In *Breeden* the Supreme Court cautioned that a 20-month gap, by itself, does not suggest any causality at all. *Id*.

Filing the prior lawsuit was a protected activity. But it was filed on August 26, 2016. (3-ER-302-316). Daniel's termination was January 18, 2018. (2-ER-294-299). This time gap is approximately 17 months; much longer than the six-month period that Daniel has trumpeted throughout his opening brief. Yet even a six-month period, without more, does not support an inference of causation. *Pickens v. Astrue*, 252 F. App'x 795, 797 (9th Cir. 2007) (no inference of causation where EEO complaint "…had been settled six months earlier").

To close this gap Daniel begins his measurement based upon the settlement of his prior case, not the filing of it. And he closes his measurement not based on his termination, but on the direction from McAnally to read off the special diet list.

---

[9] One reason that looking to timing alone is problematic is because doing so is not grounded in sound rational thinking; it is an embodiment of the *post hoc ergo propter hoc* fallacy, as this Court has recognized in other contexts. *Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000) (First Amendment Retaliation Claim).

1. <u>The Instruction to Read off the Special Diet List is Not an Adverse Action</u>

Daniel's six-month calculation is wrong because there was no adverse employment action that took place prior to his termination in January of 2018. Even so, Daniel asserts that McAnally's rather benign instruction to read off the special diet list should be counted as an adverse employment action because it was supposedly harassment.

"The antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006). As the Supreme Court explained in *White*, this standard means that "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Id*. The reasonable employee standard is an objective standard, adopted precisely because such a standard is "judicially administrable." *Id*. at 68-69. And the materiality requirement is intended to exclude trivial matters from being deemed an "adverse employment action." *Id*. at 68.

Even before *White*, this Court recognized that "[n]ot every employment decision amounts to an adverse employment action." *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000) (quoting *Strother v. Southern Cal. Permanente Med. Group*, 79 F.3d 859 (9th Cir.1996)). This is true even if the interaction has

25

some negative connotations. *Hellman v. Weisberg*, 360 F. App'x 776, 778-779 (9th Cir. 2009) ; *Chuang v. Univ. of Cal. Davis, Bd. of Trustees*, 225 F.3d 1115, 1126 (9th Cir. 2000) (failure to respond to grievances did not amount to an adverse employment action). And an ordinary or regular job-related interaction does not qualify as an adverse employment action. *Brooks*, 229 F.3d at 929 (being scheduled to work with a co-worker against plaintiff's wishes was not an adverse employment action); *see also Carboun v. City of Chandler*, 253 F. App'x 656 (9th Cir. 2007) (First-Amendment retaliation case)..

Here, the adverse employment action that Daniel invokes was a standard instruction that Daniel was to read off the special diet list. The instruction was not unique to Daniel (3-ER-462:23-464:3); (4-ER-628-629 ¶¶ 5-7) and it was not unique in coming from McAnally (3-ER-542 ¶ 4). And the relation between this instruction and the job-related duty to care for the well-being of the youth who are in custody at the detention center is self-evident. So too with Supervisor Jaime's instruction to perform other duties instead of working the front of the serving line, especially in light of the problems that had been caused during the diabetic tray incident.

While Daniel evidently bristled at receiving this instruction from McAnally, he argues no rational basis whatsoever to suggest that this instruction would dissuade an objectively reasonable employee from complaining of discrimination.

26

Daniel tries to overcome this glaring gap in logic with rhetoric, proclaiming that the instruction to read off the special diet list was the beginning of a "harassment and 'birddogging' campaign" that was a "'drumbeat of retaliatory animus' through a 'pattern of antagonism'" that led eventually to his termination. (Op. Brief p. 40, 42, Dkt # 11).

In principle, harassment can be counted as an act of retaliation. *Ray v. Henderson,* 217 F.3d 1234 (9th Cir. 2000). But the application of a principle such as this calls for evidence to support it. At the summary judgment stage Daniel's obligation was to transcend mere principle by presenting actual and admissible evidence. And that is where he comes up short.

Daniel's brief does not identify any other facts that supposedly constitutes this supposedly "steady drumbeat" of harassment, let alone any facts that might be sufficient to count as an adverse employment action. (Op. Brief at 43-45, Dkt # 11).

2. <u>Daniel Was Employed For the Entire Duration of His Prior Lawsuit Settlement</u>

Daniel hypothesizes that the defendants in this case could have simply lain in wait for a period of six months before acting. (Opening Brief p. 39 Dkt # 11). This overlooks the fact that Daniel was not reinstated as a result of the settlement agreement; rather he was actively employed for the entire duration of his prior EEOC complaint and lawsuit. A "laying in wait" theory would thus have to account

27

for this time as well. Even if the instruction to read off the special diet list could be counted as an adverse action, it would still entail laying in wait for 16 months rather than merely six (May 12, 2016 when the EEOC complaint was filed to August 17, 2017 when McAnally directed Daniel to read off the special diet list).

### 3. There Are No Other Indicators of Causation

Courts have frequently upheld that, without more, summary judgment is warranted based upon time periods shorter than the one involved here. E.g. *Fazeli v. Bank of Am., NA*, 525 F. App'x 570, 571 (9th Cir. 2013) (unreasonable to infer causation in a three-month period in light of plaintiff's conduct); *Brown v. Dep't of Public Safety*, 446 Fed.Appx. 70, 73 (9th Cir. 2011) (holding that without more, a 5–month gap between actions was insufficient to infer causation for a retaliation claim); *see also Mahoe v. Operating Engineers Loc. Union No. 3*, No. CIV. 13-00186 HG-BMK, 2014 WL 6685812, at 8 (D. Haw. Nov. 25, 2014) (stating "[t]he Ninth Circuit Court of Appeals has generally required temporal proximity of less than three months between the protected activity and the adverse employment action for the employee to establish causation based on timing alone" and collecting cases).

Daniel references a cat's paw theory against McAnally but does not develop this argument beyond merely mentioning it and does not support it with any authority. Even so a cat's paw theory requires evidence to support its application,

28

and the evidence in this case indicates that McAnally had no involvement in the decision to terminate Daniel's employment. (4-ER-630 ¶ 17); (3-ER-462:11-15).

Apart from misapprehending the proximity of time involved and making a passing reference to the cat's paw theory, Daniel offers no other reason from which a reasonable inference of causation could be made.

Analyzing causation is, at its core, an exercise in inference. And a Court informs its analysis by considering the circumstances of the case rather than applying a rigid bright-line rule. *Coszalter v. City of Salem*, 320 F.3d 968, 977-978 (9th Cir. 2003). Thus, when an employee demonstrates shortcomings in performing a job it can negate an inference of causation. *Bullen v. Sessions*, 716 F. App'x 582, 584 (9th Cir. 2017) (no inference of causation where employee failed to fulfill job duties after filing EEO complaints).

While a lengthy gap in time does not absolutely preclude an inference of causation, neither does it mandate an inference of causation to defeat a summary motion either. It does call for more than mere timing alone to plausibly make an inference of causation. At the summary judgment stage it was incumbent on Daniel to point to facts and circumstances that warrant a reasonable inference of causation in this case. The district court did not err in granting summary judgment where Daniel's only evidence of causation was to point to an incorrectly-calculated six-month gap.

29

### D. The District Court Did Not Err in Finding that Daniel Failed to Present Evidence of Pretext For Both Discrimination and Retaliation Claims

Even though Daniel failed to raise a prima facie case of discrimination or retaliation, the district court completed its analysis under the *McDonnell Douglas* test by looking to see if Daniel presented evidence of pretext. As this is a common point for all of Daniel's remaining claims, the district court consolidated the pretext analysis for all of Daniel's in one section. (1-ER-23-24). So too in this brief.

The County articulated three separate legitimate reasons for terminating Daniel's employment: Daniel's dishonesty during an internal investigation; Daniels failure to follow directions from his supervisors (both the direction to read off the special diet list and the direction to not work the front of the line) and his absence from work without approval. (2-ER-294-299); (1-ER-23:23-24:2). The district court considered whether Daniel had produced evidence showing that the County's stated reasons for terminating Daniel were pretext. Once again, Daniel failed to present evidence to meet his burden.

At this final stage of the burden-shifting approach, a plaintiff's burden is elevated from the initial requirement. E.g. *Hawn*, 615 F.3d at 1158 ("Among other things, a plaintiff's burden is much less at the prima facie stage than at the pretext stage"). When relying upon circumstantial evidence alone to try to show pretext, a

plaintiff's evidence must be both "specific and substantial." *Id.* (quoting *Steckl v. Motorola, Inc.,* 703 F.2d 392, 393 (9th Cir. 1983)).

And it is not enough to simply show that an employer was mistaken or wrong; rather the relevant question is whether the employer "honestly believed" the reasons given for termination. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1063 (9th Cir. 2002); *Merrick v. Hilton Worldwide, Inc.*, 867 F.3d 1139, 1147 (9th Cir. 2017) (citation and internal quotations omitted).

### 1. Dishonesty and Insubordination

The County had good reasons for honestly believing in the reasons for terminating Daniel's employment. The conclusions were reached only after a thorough investigation that documented the bases for concluding that Daniel had committed misconduct. (4-ER-555-598). And as noted above, the County had video evidence showing that Daniel was dishonest when recounting the events of August 24, 2017 and written confirmation showing that Daniel was dishonest when he stated that he had never been given an instruction to work the front of the line.

On appeal Daniel argues that the County was incorrect to deem him insubordinate. But this misses the mark entirely, for it does not address whether or not the County had an honest belief in its actions. Daniel offers no other argument or evidence to try to show that the termination was an act of pretext.

31

2. <u>Absence From Duty</u>

As to his absence from duty, the County again had ample evidence to support its beliefs. Daniel himself had admitted to the misconduct and pre-existing Department rules prohibited him from leaving his post, even to get food. (2-ER-258 ("Staff will not…leave the facility to get food")).[10] This too suffers from a mis-directed argument and a lack of evidence.

As the district court recognized, the County' stated reason was not that Daniel was disciplined for wanting something to eat; he was disciplined for being absent from his post without obtaining any leave to do so. (1-ER-24). On appeal Daniel points to no evidence speaking to the actual legitimate reason articulated by the County. He presented no evidence of any officer who had simply walked away from their post without first leave, and within the knowledge of department management, and who had escaped the discipline process for doing so.

The district court did not err in entering summary judgment. The court correctly applied the *McDonnell Douglas* test and entered summary judgment only after Daniel failed to present evidence to support his prima facie case. Nor did the

---

[10] Daniel also contends that state law mandates that he afforded a 30-minute meal break. (Op. Brief at 26 Dkt # 11, citing Nev. Rev. Stat. 608.019). This is incorrect. Chapter 608 of the Nevada Revised Statutes applies to private employers only and is not applicable to public employers such as Clark County. *Welfare Div. v. Fowler,* 858 P.2d 375, 378 (Nev. 1993).

district court err in finding that Daniel had failed to present evidence to show that the County' stated reasons for its actions were pretext.

### E.     The District Court Properly Granted Summary Judgment on Clark County's Counterclaim

The district addressed the County's counterclaim for breach of contract in a separate order. In the district court below the County established that it met each element of a breach of contract claim, and Daniel did not dispute the County's case. (1-ER-37:2: 1-2).[11] Nor does he dispute the County's claim on appeal.

Instead of disputing any element of the underlying breach of contract claim Daniel argues that his breach of the settlement agreement is justified on grounds of public policy; specifically that a need to present pre-settlement facts and events as "background facts" for a subsequent claim of discrimination entitle him to resurrect and re-litigate prior allegations and events that were included in the settlement agreement.  This is not a correct statement of law.

The only authority cited by Daniel to support his position is *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002). In particular Daniel relies upon a passage from *Morgan* in which the Supreme Court reasoned that hostile work

---

[11] The district court separately considered the amount of damages and awarded $1.00 in nominal damages to the County.  Nominal damages of this sort are proper under Nevada law. *Cut Rate Drug Co. v. Scott & Gilbert Co.*, 20 P.2d 651, 653 (Nev. 1933). Even so, Daniel does not appear to argue that the amount of these damages was in error.

environment claims can often turn on a series of events occurring over time. (Op. Brief. Pp. 52-53, Dkt # 11).

    1.   <u>Settlement Agreements Are Enforceable And Can Prevent a Plaintiff from Invoking Pre-Settlement Facts in a Subsequent Lawsuit</u>

"[O]ne who agrees to settle his claim cannot subsequently seek both the benefit of the settlement and the opportunity to continue to press the claim he agreed to settle." *Kirby v. Dole,* 736 F.2d 661, 664 (11th Cir. 1984). But that is precisely what Daniel seeks to do.

When this Court has considered this very point of law - the effect of a settlement agreement on a subsequent Title VII claim - it has twice concluded that a plaintiff is not permitted to rely on pre-settlement conduct in a subsequent suit.

This point was addressed in *Woods v. Washington*, 475 F. App'x. 111 (9th Cir. 2012). In *Woods* the Court reasoned that: "Because the agreement released all claims 'relating to' events from Woods' employment before the settlement, Woods is barred from relying on such events to establish his post-settlement claims, or as he argues, to provide 'background' evidence of discriminatory intent." *Id.* at 112

More recently in *Bishop v. Garland* this Court upheld the entry of summary judgment in a second Title VII discrimination claim where the plaintiff had likewise attempted to reach back in time and point to events that pre-dated a prior settlement agreement. *Bishop v. Garland*, No. 22-35139, 2023 WL 3719747 (9th

Cir. May 30, 2023). This Court credited the district court's reasoning that "…relying on these pre-settlement facts to state a claim would violate the parties' settlement agreement and would 'allow Bishop to simply relitigate claims she has already settled.'" *Bishop*, 2023 WL 3719747, at p.1. *Bishop* concerned the exclusion of evidence, not a breach of contract claim, even so the operative point of law is the same. The need to present background facts cannot overcome a prior settlement agreement.

Even in other jurisdictions, the rule that a settlement agreement can indeed bar the use of pre-settlement facts in a subsequent case does not appear to raise even a remotely controversial position. *Moore v. United States Dep't of State*, 351 F. Supp. 3d 76, 88 (D.D.C. 2019) (citing various cases enforcing a settlement agreement to bar recourse to pre-settlement events); *Hopkins v. Bd. of Educ. of City of Chicago*, 73 F. Supp. 3d 974, 983-84 (N.D. Ill. 2014); *Hook v. Regents of Univ. of California*, No. CV 05-356 JH/WPL, 2007 WL 9706061, (D.N.M. Mar. 6, 2007); *Awolesi v. Shinseki*, No. 10-CV-6125, 2012 WL 527631 (W.D.N.Y. Feb. 16, 2012). Indeed, as Daniel has already been compensated for those pre-settlement events by virtue of the prior settlement agreement, allowing him to pursue litigation a second time based upon the same facts presents the unsavory prospect of a double recovery.

The district court did not err when it rejected Daniel's unorthodox position that he was at liberty to breach the prior settlement agreement in order to pursue a new claim for hostile work environment.

### 2. The Prior Agreement Did Not Bar Future Claims

Daniel argues that a settlement agreement cannot prospectively waive future claims, but this is a fallacious straw-man argument. The County's never asserted that the prior settlement was a bar to claims that might arise in the future – merely that it was a bar to a second round of litigation based on the same pre-settlement facts. (1-ER-45, n. 2). This is a non-issue.

## VII.    CONCLUSION

The Court should affirm the district court's entry of summary judgment, as there was no error in doing so. The district court applied the correct standard, but Daniel was simply unable to produce evidence to support his allegations and to show a need for trial.

Daniel cannot present evidence to show a prima facie case of discrimination because he cannot show that he was similarly situated to Marcus McAnally. Daniel cannot present evidence to show a prima facie case of retaliation because the timing does not rationally support an inference of causation. Daniel cannot present evidence to suggest that the County's reasons were pretext.

Accordingly, the County requests this Court affirm the orders granting summary judgment in its favor.

DATED this 6th day of July, 2023.

STEVEN B. WOLFSON
DISTRICT ATTORNEY

/s/ Scott R. Davis
Deputy District Attorney
State Bar No. 10019
Jeffrey Rogan
State Bar No. 10734
500 S. Grand Central Parkway, 5th Floor
P. O. Box 552215
Las Vegas, Nevada  89155-2215
*Attorney for Defendants-Appellees*
*Clark County, Marcus McAnally and*
*John Martin*

## VIII.  STATEMENT OF RELATED CASES:

There are no known related cases pending before the U.S. Court of Appeals for the Ninth Circuit at this time.

DATED this 6th day of July, 2023.

STEVEN B. WOLFSON
DISTRICT ATTORNEY

/s/ Scott R. Davis
Deputy District Attorney
State Bar No. 10019
Jeffrey Rogan
State Bar No. 10734
500 S. Grand Central Parkway, 5th Floor
P. O. Box 552215
Las Vegas, Nevada 89155-2215
*Attorney for Defendants-Appellees*
*Clark County, Marcus McAnally and*
*John Martin*

## IX.   CERTIFICATE OF COMPLIANCE

I hereby certify that this **DEFENDANTS–APPELLEES' ANSWERING BRIEF** complies with Ninth Circuit Rule 32(e)(4).   This document is proportionately spaced, has a Times New Roman typeface of 14 point and contains 9,578 words.

DATED this 6th day of July, 2023.

STEVEN B. WOLFSON
DISTRICT ATTORNEY

/s/ Scott R. Davis
Deputy District Attorney
State Bar No. 10019
Jeffrey Rogan
State Bar No. 10734
500 S. Grand Central Parkway, 5th Floor
P. O. Box 552215
Las Vegas, Nevada 89155-2215
*Attorney for Defendants-Appellees*
*Clark County, Marcus McAnally and*
*John Martin*

## X.    CERTIFICATE OF SERVICE

I certify that I am an employee of the Office of the Clark County District Attorney and that on this 6th day of July, 2023, I served a true and correct copy of the foregoing **DEFENDANTS–APPELLEES' ANSWERING BRIEF** via the Court's electronic filing and service process.

DATED this 6th day of July, 2023.

/s/ Christine Wirt
An Employee of the Clark County District
Attorney's Office – Civil Division